UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:21-CV-23984-BB

JESSICA ARREAZA,

    Plaintiff,

vs.

ALLIED HEALTH ORGANIZATION, INC.,
a Florida Not for Profit Corporation, and
ALEJANDRO CASTRO, individually,

    Defendant.

_____/

**DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT WITH PREJUDICE FOR FAILING TO COMPLY WITH THE COURT'S MARCH 3 2022 COURT ORDER TO AMEND THE PLAINTIFF'S COMPLAINT**

    Defendants, Allied Health Organization, Inc. (hereinafter "Allied") a Florida nonprofit corporation, and Alejandro Castro (hereinafter "Castro") (collectively, the "Defendants"), hereby file their Motion to Dismiss Plaintiff's Second Amended Complaint [ECF No. 32] With Prejudice For Failing to Comply with the Court's March 3rd 2022 Court Order to Amend the Plaintiff's Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6). In support, the Defendants state as follows:

**I. INTRODUCTION**

1. This is an action for unpaid wages brought by Plaintiff pursuant to the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201, et seq. as set forth in Counts I and II against Allied, against Castro in Counts IV and V, and FLSA Retaliation as to Allied in Count III and Castro in Count VI. [ECF

No. 32]. All six counts fail to meet the pleading standards set forth under the Federal Rules of Civil Procedure, and thus, must be dismissed as a matter of law.

2. On March 3rd 2022, the Honorable Beth Bloom held a hearing on the Defendants' Motion to Dismiss the Plaintiff's Amended Complaint (ECF No. 11). The Court granted the Defendants' Motion to Dismiss allowing leave to amend for the Plaintiff-- *only if* the Plaintiff could cure a jurisdictional defect in its complaint.

3. Specifically, the Court spent significant time at the March 3rd 2022 hearing on the requirement that the Plaintiff herself properly plead that she directly participated in interstate commerce. Put another way, "an employee may claim 'individual coverage' if [s]he regularly and directly participates in the actual movement of things or persons in interstate commerce." *Ceant v. Aventura Limo. & Transp. Serv., Inc.*, 874 F. Supp. 2d 1373, 1376 (S.D. Fla. 2012).

4. At the March 3rd 2022 hearing, the Honorable Judge Bloom spent ample time explaining that leave was being provided to the Plaintiff *only if* she could articulate **where** *she* submitted the alleged claims in the United States (i.e.—to what state or city or approximate location) that would meet the requisite pleading standard.

5. As defense counsel explained at the March 3rd 2022 hearing, this should not be a difficult task since the Plaintiff herself is required to have **directly participated** in the transmission of "billing claims" in interstate commerce. Accordingly, she should have personal knowledge of where she submitted these claims.

6. The Honorable Judge Bloom further questioned Plaintiff's Counsel as to *where* her client allegedly transmitted these "billing claims" even inquiring if the claims were submitted to

2

Tallahassee, or outside the state of Florida.[1] Obviously, claims submitted to Tallahassee would be insufficient to establish interstate commerce.

7. Directly after the March 3rd 2022 hearing, defense counsel immediately researched where 340b entities located within the State of Florida submit claims (although it is arguably irrelevant since the Plaintiff has *not* pled that she directly participated in the claim submission herself). Although the 340b program is a federal program in terms of funding, the 340b program is administered on the state level (like Medicaid) by Florida's Agency for Health Care Administration ("AHCA").

8. On March 4th 2022 at 9:19am EST, Defense Counsel emailed Plaintiff's Counsel a link on Florida's AHCA website regarding Florida's administration of 340b claims on the state level. *See* **Exhibit A** attached.

9. Thus, the Court's comments made at the March 3rd 2022 hearing were intuitively accurate in that the 340b claims at issue were submitted to Tallahassee within the State of Florida and administered at the state level. Had the Plaintiff directly participated in the claim submission herself (which is not pled in any of her three complaints) she would have known this fact.

10. The Plaintiff did *not* cure this fatal pleading defect when she filed her Second Amended Complaint (ECF No. 32) which is the third complaint that the Plaintiff has filed with this same pleading defect the court has instructed the Plaintiff to resolve. (*Compare* ECF No.'s 1, 11 & 32).

11. Instead, the Plaintiff restated the same defective statement that omits: (a) *where* the claims were sent, and (b) the Plaintiff's direct participation in the claim submission:

> 15. Furthermore, Defendant ALLIED HEALTH engaged in interstate commerce in the course of its submission of billings and receipt of payment involving out-of-state medical payors, out-of-state insurers, and/or the United States government as a 340(b) entity.

---

[1] The transcript of the March 3 2022 hearing is ordered and pending.

(ECF No. 32, ¶ 15).

12. Simply stated, the Plaintiff did not and cannot cure this pleading defect because she did *not* personally submit any claims to any insurance company outside the state of Florida (the Plaintiff admits she was a lab technician that swabbed patients and filled out a requisition forms that were transmitted to Testing Matters Inc. laboratory located in Broward County, Florida). The Plaintiff never personally submitted any 340b entity claims anywhere, which is why she cannot plead *where* she allegedly submitted them.

13. Instead, the Plaintiff, once again, claims that Allied (not the Plaintiff) submitted claims out of state—while she continues to ignore the Court's directive to plead where she, as a direct participant, sent these alleged claims.

14. Moreover, had the Plaintiff actually submitted these 340b claims, she would have known these claims were submitted within the State of Florida.

15. Even if Allied Health's 340b claims were submitted to a *specific location* out of state (which still has not been pled despite the Court's very clear instructions to remedy these defects at the March 3rd 2022 hearing) the Plaintiff still has failed to plead she **directly participated** in interstate commerce **herself** by submitting claims outside of the state of Florida.

16. The Plaintiff cannot plead that she submitted these claims because she admits that she was not a biller for Allied Health. She merely swabbed 340b patient at a state funded collection center in Miami-Dade County, Florida. Then she pleads Allied Health (not the Plaintiff) submitted claims out of state when these claims were submitted and processed at Florida's AHCA located in Tallahassee, Florida.

17. A review of Plaintiff's Second Amended Complaint proves that the Plaintiff cannot cure these pleading deficiencies despite being provided three (3) separate opportunities to amend with

clear instructions from the Court on what corrections were required. The Plaintiff has proven that leave to amend is futile and thus, her complaint must be dismissed with prejudice.

## II. MEMORANDUM OF LAW AND ARGUMENT

**a. Standard for a Motion to Dismiss.**

In reviewing a motion to dismiss under Rule 12(b)(6), a court should take all well pleaded facts in the plaintiff's complaint and all reasonable inferences drawn from those facts as true. *Jackson v. Okaloosa Cnty., Fla.,* 21 F.3d 1531, 1534 (11th Cir. 1994). Federal Rule of Civil Procedure 8(a)(2) requires a short and plain statement of the claim showing that the pleader is entitled to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (quoting rule).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted). Instead, a plaintiff must plead sufficient facts to state a plausible basis for the claim. *Id.* In other words, a plaintiff's [f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.*; *see also* 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1216 (3d ed. 2013) ("it is clear that in order to satisfy the requirements of Rule 8(a) the pleading must contain something more by way of a claim for relief than a . . . statement of facts that merely creates a suspicion that the pleader might have a legally cognizable right of action.").

Courts reviewing a complaint on a motion to dismiss are not required to abandon all common sense or to ignore their experience. In fact, the opposite is true:

> Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. 490 F.3d, at 157–158. But where the well-pleaded facts do not permit the court to infer more than the mere

>possibility of misconduct, the complaint has alleged—but it has not "show[n]"—"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

*Iqbal*, 556 U.S. 679 (emphasis added).

### b. Plaintiff Failed to State a Claim for Individual Coverage under the FLSA.

For individual coverage to apply, the particular employee in question "must be directly participating in the actual movement of persons or things in interstate commerce by (i) working for an instrumentality of interstate commerce, *e.g.*, transportation or communication industry employees, or (ii) by regularly using the instrumentalities of interstate commerce in his work, *e.g.*, regular and recurrent use of interstate telephone, telegraph, mails, or travel." *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1315-16 (11th Cir. 2011) (emphasis in original).

With regard to individual coverage, the "Supreme Court has articulated that it is the intent of Congress to regulate only activities constituting interstate commerce, not activities merely affecting commerce." *Thorne v. All Restoration Servs., Inc.*, 448 F.3d 1264, 1266 (11th Cir. 2006) (emphasis added) (citing *McLeod v. Threlkeld*, 319 U.S. 491, 497 (1943)).

Put another way, "an employee may claim 'individual coverage' if [s]he regularly and directly participates in the actual movement of things or persons in interstate commerce." *Ceant v. Aventura Limo. & Transp. Serv., Inc.*, 874 F. Supp. 2d 1373, 1376 (S.D. Fla. 2012). In *Ceant*, 874 F. Supp. 2d at 1378, the district court explained that, at a bare minimum, in order to establish the existence of individual coverage a plaintiff must "state the nature" of the plaintiff's work and "must provide only straightforward allegations connecting that work to interstate commerce." *Ceant v. Aventura Limo. & Transp. Serv., Inc.*, 874 F. Supp. 2d 1373, 1378 (S.D. Fla. 2012); *see also Kitchings v. Fla. United Methodist Children's Home, Inc.*, 393 F. Supp. 2d 1282, 1293-94 (M.D. Fla. 2005) ("For an employee to be engaged in commerce, 'a substantial part of the employee's

work must be related to interstate commerce.'") (quoting *Boekemeier v. Fourth Universalist Soc'y in City of N.Y*, 86 F. Supp. 2d 280, 287 (S.D.N.Y. 2000)).

Plaintiff's individual coverage theory appears to rest on paragraph 15 of her Second Amended Complaint, in which she alleges that:

> 15. Furthermore, Defendant ALLIED HEALTH engaged in interstate commerce in the course of its submission of billings and receipt of payment involving out-of-state medical payors, out-of-state insurers, and/or the United States government as a 340(b) entity.

[ECF No. 32].

However, these allegations are entirely vague and not well-pleaded and therefore fail the standard applied by this Court in *Perez v. Muab*, No. 10-62441-Civ, 2011 WL 845818, at *3 (S.D. Fla. Mar. 7, 2011), and the Eleventh Circuit recognized in *Thorne*, 448 F.3d 1266, that **activities "merely affecting interstate commerce" do <u>not</u> generate individual coverage.**

At least half of this paragraph consists entirely of vague, general legal conclusions regarding interstate commerce. These portions merely repeat parts of the legal test for individual coverage but do not include any actual factual allegations. This Court and others have previously rejected such vague, barebones recitations of the elements. For example, in *Perez v. Muab*, No. 10-62441-Civ, 2011 WL 845818, at *3 (S.D. Fla. Mar. 7, 2011), this Court rejected that a plaintiff stated a well-pleaded claim by alleging that "during her employment with Muab, Inc., [the plaintiff] was engaged in commerce or in the production of goods for commerce." *Cf. Gonzalez v. Old Lisbon Rest. & Bar L.L.C.*, 820 F. Supp. 2d 1365, 1370 (S.D. Fla. 2011) ("Plaintiff's complaint is devoid of any allegations describing the type of business activities in which Defendants are engaged and for what purpose. Instead, Plaintiff literally has taken the legal test for joint enterprise coverage and repeated its exact terms as her allegations . . . A reader of Plaintiff's complaint is no more informed about the alleged factual basis for Plaintiff's legal claim (*i.e.*, that Defendants performed

related activities for a common business purpose) than a reader of the federal regulation on which the test is based.").

Moreover, Plaintiff does not even attempt to allege any factual allegations to support more specifically *how* the Plaintiff in her engaged in interstate commerce. [ECF No. 32, ¶ 15]. These allegations are required to be pled with specificity to establish that the non-profit organization is subject to liability under the FLSA. Namely, whether after the specific goods and materials which she directly handled reached her workplace, the goods and materials continued to move in interstate commerce.[2]

Lacking such clarification, the Court would need to engage in pure speculation to make that inference because the Eleventh Circuit holds that "[w]hen goods reach the customer for whom they were intended, the interstate journey ends and employees engaged in any further intrastate movement of the goods are not covered by the Act." *Thorne v. All Restoration Servs., Inc.*, 448 F.3d 1264, 1267 (11th Cir. 2006).

Relying on *Thorne* and similar authorities, district courts in the Eleventh Circuit have found that individual coverage does not exist where an employee merely handles or resells goods on an intrastate basis because the interstate journey of the goods ended when those goods reached the employer's place of business. *See, e.g., Joseph v. Nichell's Caribbean Cuisine, Inc.*, 862 F. Supp. 2d 1309, 1313 (S.D. Fla. 2012) ("Next, handling goods, in this case food or beverages, that have previously traveled in interstate commerce does not constitute engaging in interstate commerce.");

---

[2] While Plaintiff does make multiple conclusory allegations claiming that Allied itself engages in interstate commerce or uses the instrumentalities of interstate commerce [ECF No. 32] the Eleventh Circuit has been very clear that such allegations directed at an employer are relevant only to an enterprise theory. *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1316 (11th Cir. 2011) ("While the point of origin of these vehicles may be relevant under a theory of enterprise coverage, their origin is irrelevant to the issue of individual coverage–namely, whether Josendis himself directly participated in the actual movement of persons or things in interstate commerce."). Therefore, to the extent Plaintiff makes allegations regarding only Defendant itself, those allegations do not assist her in stating a claim for individual coverage unless she personally participated in the actual movement of persons or things in interstate commerce.

*McCraken v. Bubba's World, LLC*, No. 6:09-cv-1954-Orl-28DAB, 2010 WL 3463280, at *2 (M.D. Fla. Aug. 4, 2010) (finding no individual coverage where employee sold goods that originated out of state at a retail store and that the occasional use of instrumentalities to ship those goods back out of state was insufficiently regular to qualify), RR adopted by 2010 WL 3463277; *Top Chef Invest., Inc.*, No. 07-21598-CIV, 2007 WL 4247646, at *2 (S.D. Fla. Nov. 30, 2007) (finding no individual coverage for cook preparing food which originated out of state to serve to local customers because "Plaintiff does not allege that the food later returned to interstate commerce."); *Thompson v. Robinson*, No. 6:06-cv-771-Orl-19JGG, 2007 WL 2714091, at *1-3 (finding no individual coverage where a line cook prepared food which was sold locally).

In the present case, the Plaintiff does not (and after being provided three opportunities to remedy these pleading deficiencies she clearly cannot) allege that she directly participated in her role at Allied Health by swabbing patients in Miami-Dade County, Florida, in interstate commerce because Allied Health is *not* licensed to provide such services outside of the State of Florida. Indeed, the only location that the Plaintiff alleges to have worked at is in the State of Florida. [ECF No. 32].

Here, the Plaintiff fails to assert any specific factual allegations regarding: (a) what information, persons, or things, **she directly transmitted out-of-state** (she alleges Allied Health submitted claims out of state but she fails to allege she directly participated in the out of state submission of claims), and (b) **where these items were transmitted outside of the State of Florida**. For example, if the Plaintiff were to allege that she transmitted items or information outside the State of Florida, but these items were transmitted to another country, the allegations pled by the Plaintiff would legally insufficient to establish the Defendant is subject to the FLSA.

Regardless, the Plaintiff has failed to assert the necessary factual allegations so that the Defendant is on notice of how the FLSA applies to Allied.

In sum, because Plaintiff's complaint contains no well-pleaded factual allegations allowing the Court to conclude that *she* regularly and directly participated in the movement of anything in interstate commerce, the Court should dismiss Plaintiff's claim for individual coverage under the FLSA. *See Ceant*, 874 F. Supp. 2d at 1376 (dismissing individual coverage claim because Plaintiff did not include allegations specifically connecting his work to interstate commerce).

**(i)     Plaintiff Failed to State a Claim for Enterprise Coverage.**

In the typical case, a court determines whether enterprise coverage exists only by looking for well-pleaded allegations establishing that the employer: (1) has employees engaged in commerce or the production of goods for commerce, or has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and (2) has at least $500,000.00 of annually gross volume of sales or business done. *Polycarpe*, 616 F.3d at 1220 (citing 29 U.S.C. § 203(s)(1)(A)). The reason the analysis nearly universally proceeds this way, by reference only to § 203(s), is that most employers operate for- profit organizations with a business purpose. But this case is not the typical case and requires taking a step back to § 203(r)(1).

In *Jacobs v. New York Foundling Hospital*, 577 F.3d 93, 99 n.7 (2d Cir. 2009), the Second Circuit noted that "the existence of FLSA enterprise coverage is a two-step determination."[3] "That is, an employer must not only be an 'enterprise' under" § 203(s), but it also must be so under §

---

[3] While not a case about nonprofits, in *Josendis v. Wall to Wall Residence Repairs, Inc.,* 662 F.3d 1292, 1229 (11th Cir. 2011), the Eleventh Circuit recognized that § 203(r)(1) must be satisfied first when it referred to § 203(r)(1) for the definition of an "enterprise" and then relied on § 203(s) to explain the secondary consideration of whether an "enterprise" can be considered as "engaged in commerce or in the production of goods for commerce."

203(r)(1). *Id.* This is because § 203(r)(1) excludes certain types of organizations from the definition of an "enterprise."

29 C.F.R. § 779.214 further explains that:

> The activities described in section 3(r) are included in an enterprise only when they are performed for a "business" purpose. Activities of eleemosynary, religious, or educational organization may be performed for a business purpose. Thus, where such organizations engage in ordinary commercial activities, such as operating a printing and publishing plant, the business activities will be treated under the Act the same as when they are performed by the ordinary business enterprise. (*See Mitchell v. Pilgrims Holiness Church Corp.*, 210 F. 2d 879 (CA– 7); cert. den. 347 U.S. 1013.) However, **the nonprofit educational, religious, and eleemosynary activities will *not* be included in the enterprise** unless they are of the types which the last sentence of section 3(r), as amended in 1966, declares shall be deemed to be performed for a business purpose. Such activities were not regarded as performed for a business purpose under the prior Act and are not so considered under the Act as it was amended in 1966 except for those activities listed in the last sentence of amended section 3(r). (See § 779.21.)

(emphasis added).[4]

The Department of Labor's longstanding position is that "enterprise coverage does not apply to a private, non-profit enterprise where the eleemosynary . . . activities of the non-profit enterprise are not in substantial competition with other businesses." *D.O.L Opinion Ltr.*, FLSA 2005-12NA, Sept. 23, 2005. Likewise, federal courts, both at the circuit and appellate level, agree that "[u]nless it engages in commercial activity in competition with private entrepreneurs or qualifies as one of the organizations listed in 29 U.S.C. § 203(r)(2), a non-profit charitable organization is not an 'enterprise' under § 203(r) because it is not conducted for a 'business purpose.'" *Joles v. Johnson Cnty. Youth Serv. Bureau*, 885 F. Supp. 1169, 1175 (S.D. Ind. 1995); *accord Reagor*, 2012 WL

---

[4] "Eleemosynary" means "Of, relating to, or assisted by charity; not-for-profit." BLACKS LAW DICTIONARY 559 (8th ed. 2004).

5507181, at *3; Jacobs, 577 F.3d at 97; Kitchings, 393 F. Supp. 2d at 1293-94; *Wagner v. Salvation Army*, 660 F. Supp. 466, 468 (E.D. Tenn. 1986).

In the present case, the Plaintiff has *not* alleged that the Defendant engages in commercial activity in competition with private entrepreneurs, or that the Defendant qualifies as one of the organizations listed in 29 U.S.C. § 203(r)(2). These types of allegations are necessary to enable the Court to conclude that this behavior, if true, plausibly constitutes commercial competition with the private sector.

Moreover, even if the Plaintiff attempts to allege that the Defendant is paid by health benefit plans or the government for COVID-19 related services, this does not make Defendant an "enterprise." As another district court in this circuit logically noted:

> The fact that an eleemosynary organization receives income in the form of fees or gifts does not itself render it a "for profit" or "business" enterprise. Obviously, the organization will have expenses which must be offset by revenues from some source.

*Kitchings v. Florida United Methodist Children's Home, Inc.*, 393 F. Supp. 2d 1282, 1294 (M.D. Fla. May 18, 2005).

In light of the Plaintiff's admissions that Allied Health is a nonprofit healthcare organization [ECF No. 32] which provides healthcare services to the uninsured and underinsured communities of South Florida, then it would be inconsistent to conclude that Plaintiff has adequately stated a claim for enterprise coverage on these allegations. *See, e.g., Abecassis v. Eugene M. Cummings, P.C.*, No. 09-81846- CIV, 2010 WL 9452252, at *8 (S.D. Fla. June 3, 2010) (noting that a fraudulent misrepresentation claim failed under the *Twombly/Iqbal* standard because attachments to the complaint contradicted that any misrepresentation was made).

Stated differently, allowing Plaintiff to move forward on such ambiguous allegations, none of which directly suggest that Defendant engaged in any competition – let alone substantial

competition – with the private sector, may have been appropriate under the "no set of facts" standard in *Conley v. Gibson*, 355 U.S. 41 (1957), but that standard is "is no longer good law." *Hernandez-Rodriguez v. A1 Sun Protection, Inc.*, No. 09–23057–CIV, 2010 WL 996529, at *2 n.1 (S.D. Fla. Mar. 17, 2010).

The Defendants anticipate that Plaintiff may argue the Court should wait for summary judgment to address enterprise coverage, but the Defendants respectfully suggest that the time is now for the Court to protect this nonprofit organization from the time, expense, and distraction of litigation which Plaintiff has not yet demonstrated is viable under the requisite pleading standards. *See Arriaga-Zacarias v. Lewis Taylor Farms, Inc*., No.. 7:08-CV-32(HL), 2008 WL 4544470, at *1 (M.D. Ga. Oct. 10, 2008) (noting that motions to dismiss "present purely legal questions and can therefore be resolved without the need for discovery, which can spare the court and the litigants the myriad costs of discovery, if the court's ruling results in dismissal."). It is obvious that Defendant is not a profit-making enterprise which competes with the private sector – it is a nonprofit organization – and every dollar spent on this litigation is a dollar which could have been used to treat those in need of healthcare services during the current pandemic.

Finally, Defendants direct the Court's attention to the Tenth Circuit's decision in *Reagor v. Okmulgee Cnty. Family Res. Ctr., Inc*., 501 Fed. Appx. 805 (10th Cir. Nov. 14, 2012). This case highlights that a Plaintiff truly has the burden to plead specific facts which enable a court to conclude that a nonprofit charity may be subject to enterprise coverage.

In *Reagnor*, the Tenth Circuit heard an appeal of the dismissal of an FLSA complaint, in pertinent part, based on a failure to adequately plead enterprise coverage over a nonprofit. The Tenth Circuit affirmed. In doing so, the Tenth Circuit noted that the general rule is "activities of nonprofits are not considered to be conducted for a common business purpose unless they engage

in a commercial activity," but that "[n]othing in the complaint suggests that [defendant nonprofit] OCFRC was engaged in a business purpose or in any type of competition." *Id.* at *5. The Tenth Circuit concluded that, absent such allegations, a district court "cannot draw an inference that her claim that she is entitled to protection under the FLSA is plausible." *Id.*

It therefore appears that because the Plaintiff's Complaint expressly admits that Allied Health is a nonprofit organization, this Court is dealing with the exact same fact patter as that in *Reagor* (i.e., knowledge of defendant's nonprofit charitable status and a complaint that fails to allege actual facts suggesting engagement in commercial activities that are in competition with the private sector). As a result, the Court should dismiss Plaintiff's claims for a failure to plead enterprise coverage as it relates to the nonprofit Defendant, Allied Health., and Castro

### III. CONCLUSION.

The Plaintiff has failed to alleged facts adequate to state a plausible claim for relief against a nonprofit under either an FLSA enterprise or individual coverage theories, which renders Counts I, II, III, IV and V of the Second Amended Complaint [ECF No. 32] defective as a matter of law. These Counts should be dismissed.

WHEREFORE, the Defendants, Allied Health Organization, Inc., a Florida nonprofit corporation, and Alejandro Castro, respectfully request the Court dismiss Plaintiff's Second Amended Complaint [ECF No. 32], as well as any other relief to which the Court deems the Defendants entitled.

Respectfully submitted,

/s/ Robyn Lynn Sztyndor
Robyn Lynn Sztyndor
Florida Bar No.: 89253
*Counsel For Defendant*
RLS LAW, P.A.

                                              401 E. Las Olas Blvd. Suite 1400
                                              Fort Lauderdale, FL 33301
                                              Tel.: 786-395-1824
                                              Email: rls409@nyu.edu

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on April 4th, 2022, I filed the foregoing document with the Clerk of Court using CM/ECF.

>                             /s/ *Robyn Lynn Sztyndor*
>                             Robyn Lynn Sztyndor, Esq.